IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SUPER-SPARKLY SAFETY STUFF, LLC, | § | CIVIL ACTION NO. |
| | § | |
| | § | |
| Plaintiff, | § | 3:18-cv-0587-N |
| v. | § | |
| | § | |
| SKYLINE USA, INC., | § | |
| dba GUARD DOG SECURITY, | § | |
| | § | |
| Defendant. | § | |

## FIRST AMENDED ANSWER AND FIRST AMENDED COUNTERCLAIMS

Defendant Skyline USA, Inc., dba Guard Dog Security (Skyline) files this first amended answer and first amended counterclaims to the complaint of Super-Sparkly Safety Stuff, LLC (Super-Sparkly), respectfully showing:

## ANSWER

Skyline denies any and all allegations contained in the Complaint that are not specifically admitted.

## JURISDICTION AND VENUE

1.     Skyline admits that this Court has jurisdiction.

2.     Skyline has waived its defense of improper venue.

3.     Skyline has waived its defense of lack of personal jurisdiction.

4.     Skyline denies it is engaging in tortuous (*sic*, tortious) conduct and denies it has placed into commerce illegal copies of Plaintiff's patents by any means.

## PARTIES

5.     Skyline lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 5 of the Complaint and therefore denies them.

1

6. Skyline admits that it is a corporation organized under Florida law and that Skyline has business activities in Texas, the United States, and on the World Wide Web. Skyline admits that it offers for sale a product called "Bling It On" pepper spray but denies that the product infringes upon Super-Sparkly's patents or embodies Super-Sparkly's pepper spray.

**FACTS ASSERTED**

7. Skyline lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 7 of the Complaint and therefore denies them.

8. Skyline lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 8 of the Complaint and therefore denies them.

9. Skyline admits that is a seller and importer of goods from China and elsewhere and sells the goods as retail and wholesale nationwide.

10. Skyline admits the allegations in paragraph 10 of the Complaint.

11. Skyline admits the allegations in paragraph 11 of the Complaint.

12. Skyline lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 12 of the Complaint and therefore denies them.

13. Skyline lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 13 of the Complaint and therefore denies them.

14. Skyline lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 14 of the Complaint and therefore denies them.

15. Skyline lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 15 of the Complaint and therefore denies them.

16. Skyline denies that its product infringes upon Super-Sparkly's patents or embodies Super-Sparkly's pepper spray. Skyline lacks knowledge or information sufficient to form a belief

about the truth of the remaining allegations contained in Paragraph 16 of the Complaint and therefore denies them.

17.     Skyline lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 17 of the Complaint and therefore denies them.

18.     Skyline admits that it continues to sell a product but denies that the product is infringing.

19.     Skyline admits that it advertises and offers for sale its product at the ASD tradeshow in Las Vegas, Nevada, but denies that its product infringes upon Super-Sparkly's patents. Skyline lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 19 of the Complaint and therefore denies them.

20.     Skyline lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 20 of the Complaint and therefore denies them.

21.     Skyline lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 21 of the Complaint and therefore denies them.

22.     Skyline denies that its product embodies Super-Sparkly's patents.

23.     Skyline lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 23 of the Complaint and therefore denies them.

24.     Skyline lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 24 of the Complaint and therefore denies them.

25.     Skyline lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 25 of the Complaint and therefore denies them.

26.     Skyline denies that it is selling an illegal product that embodies Super-Sparkly's patents.  Skyline lacks knowledge or information sufficient to form a belief about the truth of the

remaining allegations contained in Paragraph 26 of the Complaint and therefore denies them.

27.     Skyline denies the allegations in paragraph 27 of the Complaint.

28.     Skyline denies the allegations in paragraph 28 of the Complaint.

29.     Paragraph 29 contains a reference to a statute and no response is required.

30.     Skyline denies the allegations in paragraph 30 of the Complaint.

31.     Skyline denies the allegations in paragraph 31 of the Complaint.

32.     Skyline denies the allegations in paragraph 32 of the Complaint.

33.     Skyline admits that it markets its product under its product line Guard Dog Security

under the name "Bling It On," but denies its product is illegal.

34.     Skyline denies the allegations in paragraph 34 of the Complaint.

35.     Skyline denies the allegations in paragraph 35 of the Complaint.

36.     Skyline denies the allegations in paragraph 36 of the Complaint.

37.     Skyline denies the allegations in paragraph 37 of the Complaint.

38.     Skyline denies that its products infringe Super-Sparkly's patents or are "knock-off

pepper spracy."  Skyline lacks knowledge or information sufficient to form a belief about the truth

of the remaining allegations contained in Paragraph 38 of the Complaint and therefore denies them.

39.     Skyline denies the allegations in paragraph 39 of the Complaint.

40.     Skyline denies the allegations in paragraph 40 of the Complaint.

[Paragraphs 41 through 44 are missing]

45.     Skyline denies the allegations in paragraph 45 of the Complaint.

46.     Skyline denies the allegations in paragraph 46 of the Complaint.

47.     Skyline does not know what Super-Sparkly means by "the items." Skyline therefore

lacks knowledge or information sufficient to form a belief about the truth of the allegations

contained in Paragraph 47 of the Complaint and therefore denies them.

[Paragraph 48 is missing]

49.    Skyline does not know what Super-Sparkly means by "the products." Skyline therefore lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 49 of the Complaint and therefore denies them.

50.    Skyline denies the allegations in paragraph 50 of the Complaint.

51.    Skyline denies the allegations in paragraph 51 of the Complaint.

52.    Skyline denies the allegations in paragraph 52 of the Complaint.

53.    Skyline denies the allegations in paragraph 53 of the Complaint.

54.    Skyline denies the allegations in paragraph 54 of the Complaint.

55.    Skyline denies the allegations in paragraph 55 of the Complaint.

56.    Skyline denies the allegations in paragraph 56 of the Complaint.

57.    Skyline denies the allegations in paragraph 57 of the Complaint.

58.    Skyline denies the allegations in paragraph 58 of the Complaint.

## FIRST CLAIM

59.    Skyline restates and incorporates by reference its responses to the allegations contained in Paragraphs 1-58 of the Complaint as though fully set forth at length.

60.    Skyline denies the allegations in paragraph 60 of the Complaint.

61.    Skyline denies the allegations in paragraph 61 of the Complaint.

62.    Skyline denies the allegations in paragraph 62 of the Complaint.

63.    Skyline denies the allegations in paragraph 63 of the Complaint.

## SECOND CLAIM

64.    Skyline restates and incorporates by reference its responses to the allegations

contained in Paragraphs 1-63 of the Complaint as though fully set forth at length.

65.     Skyline denies the allegations in paragraph 65 of the Complaint.

66.     Skyline denies the allegations in paragraph 66 of the Complaint.

67.     Skyline denies the allegations in paragraph 67 of the Complaint.

68.     Skyline denies the allegations in paragraph 68 of the Complaint.

69.     Skyline denies the allegations in paragraph 69 of the Complaint.

70.     Skyline denies the allegations in paragraph 70 of the Complaint.

**AS TO PLAINTIFF'S ALLEGED PRAYER FOR RELIEF**

A.      Skyline denies that Super-Sparkly is entitled to the relief requested in Paragraph A
of its Prayer for Relief.

B.      Skyline denies that Super-Sparkly is entitled to the relief requested in Paragraph B
of its Prayer for Relief.

C.      Skyline denies that Super-Sparkly is entitled to the relief requested in Paragraph C
of its Prayer for Relief.

D.      Skyline denies that Super-Sparkly is entitled to the relief requested in Paragraph D
of its Prayer for Relief.

E.      Skyline denies that Super-Sparkly is entitled to the relief requested in Paragraph E
of its Prayer for Relief.

F.      Skyline denies that Super-Sparkly is entitled to the relief requested in Paragraph F
of its Prayer for Relief.

G.      Skyline denies that Super-Sparkly is entitled to the relief requested in Paragraph G
of its Prayer for Relief.

H.      Skyline denies that Super-Sparkly is entitled to the relief requested in Paragraph H

of its Prayer for Relief.

## AFFIRMATIVE DEFENSES

Without prejudice to the denials set forth in its Answer, without admitting any allegations of the Complaint not otherwise admitted, and without undertaking any of the burdens imposed by law on Super-Sparkly, Skyline asserts the following separate defenses to the Complaint:

a.      Super-Sparkly failed to properly mark its products under 35 U.S.C. §287 or provide timely actual notice of infringement.

b.      Super-Sparkly has not met the requirements for injunctive relief.

c.      Skyline has acted in good faith and/or with justification in its alleged use of the subject matter.

d.      United States Design Patents D731,172 ("the '172 Patent") (attached as exhibit 1) and D696,857 ("the '857 Patent") (attached as exhibit 2) (collectively the "alleged design patents" or "Patents in Suit") are invalid and cannot form the basis for any claim of infringement under 35 U.S.C. §102.

e.      Super-Sparkly's alleged design patents are invalid and cannot form the basis for any claim of infringement under 35 U.S.C. §103.

f.      Super-Sparkly's alleged design patents are invalid and cannot form the basis for any claim of infringement under 35 U.S.C. §112.

g.      Super-Sparkly's alleged design patents are invalid and cannot form the basis for any claim of infringement under 35 U.S.C. §115.

h.      Super-Sparkly's alleged design patents are invalid and cannot form the basis for any claim of infringement under 35 U.S.C. §256.

i.      On information and belief, Super-Sparkly has engaged in patent misuse in

connection with the enforcement, licensing, or attempted enforcement and/or licensing of the Patents in Suit in that Super-Sparkly knows the Patents in Suit are invalid, unenforceable, and/or not infringed by Skyline's accused design.

j.      Any claims for damages, lost profits, and/or a reasonable royalty under 35 U.S.C. §284 and/or 35 U.S.C. §289, which are denied, are limited to the portion of the design and/or article of manufacture claimed and not the entire article of manufacture sold.

k.      The Patents in Suit are unenforceable due to inequitable conduct.  The named inventors of the Patents in Suit, Atteberry and Mazzone, had knowledge of the Pepperface and Safely Sexy Defense prior art designs before the design patent application dates of the Patents in Suit and, on information and belief, before the conception dates of the Patents in Suit.  Despite their knowledge that the Pepperface and Safely Sexy designs were highly material prior art designs, Atteberry and Mazzone did not disclose this prior art to the patent office during the period of time when they were prosecuting their applications for the Patents in Suit.  The Pepperface and Safely Sexy prior art designs are highly material because they disclose designs of rhinestones on a pepper spray canister.  When the Pepperface prior art designs are combined with other prior art disclosed in the "Wall of Bling" Patent Applications and Response Letter as described above, the designs of the Patents in Suit, if not invalid through anticipation, are rendered invalid as obvious.

## FIRST AMENDED COUNTERCLAIMS

### PARTIES

1.      Skyline USA, Inc., dba Guard Dog Security (Skyline) is a Florida Corporation.

2.      Upon information and belief, and as alleged in the Complaint, Super-Sparkly Safety Stuff, LLC (Super) is an entity organized within the state of Texas with its principal headquarters at 7015 Twin Hills Ave., Dallas, TX 75231.

## JURISDICTION AND VENUE

3.      Super-Sparkly is subject to personal jurisdiction in this Court and has previously appeared before and invoked the jurisdiction of this Court.

4.      Super-Sparkly alleges in its Complaint that Skyline has infringed and continues to infringe United States Design Patents D731,172 ("the '172 Patent") (attached as exhibit 1) and D696,857 ("the '857 Patent") (attached as exhibit 2) (collectively the "alleged design patents" or "Patents in Suit").

5.      This Court has subject matter jurisdiction over these counterclaims under 28 U.S.C. § 1338(a), the Patent Laws of the United States, 35 U.S.C. § 100 et seq., the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and 28 U.S.C. §§ 1332(a)(1), as (i) this action is based upon an actual controversy between Skyline and Super-Sparkly regarding the invalidity, unenforceability, and non-infringement of the '172 and '857 Patents; and (ii) on information and belief, there is complete diversity of citizenship between Skyline and Super-Sparkly. A judicial declaration is necessary and appropriate to resolve these controversies.

6.      Skyline also seeks monetary damages arising from Super-Sparkly's violation of the Lanham Act, tortious interference with contracts, tortious interference with business relations and prospective contracts, business disparagement, and defamation, as set forth below.

7.      This Court has jurisdiction pursuant to the provisions of 28 U.S.C. §§ 1331, 1338, 1367, 2201, and 2202.

8.      On information and belief, Super-Sparkly does business within the State of Texas by contracting to supply and/or actually supplying goods and/or services within the State of Texas, either directly or through subsidiaries, distributors or other intermediaries.

9.      Super-Sparkly has also sent written communications to at least one of Skyline's

customers and/or potential customers in Texas alleging infringement of the '172 and '857 Patents by Skyline.

10.     Super-Sparkly has otherwise purposefully availed itself of the privileges and benefits of the laws of the State of Texas. Therefore, Super-Sparkly is subject to the jurisdiction of this Court pursuant to Texas Civil Practice & Remedies Code § 17.042.

11.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1400(b) and 1391.

## FACTS

12.     The '172 Patent is entitled "Rhinestone Covered Container for Pepper Spray Canister."  The '857 Patent is entitled "Rhinestone Covered Container for Pepper Spray."  The named inventors of the '172 and '857 Patents are Andrea A. Atteberry (Atteberry) and Gabriel P Mazzone (Mazzone).  Drawing figures 3 (bottom view) and 13 (front view) of the '172 Patent and drawing figures 3 (bottom) and 1 (perspective view) of the '857 Patent are shown below.



'172 Patent                              '857 Patent

13.     Rhinestone covered containers for Pepper Spray and Pepper Spray Canisters have been known in the prior art since at least as early as 2006.  Examples of these are shown below on a June 2006 capture by the internet archive wayback machine (http://web.archive.org) of the

website pepperface.com.



14.     On information and belief, additional prior art Pepperface designs include the following:



15.     The prior art Pepperface rhinestone covered containers were marketed using celebrity designs as shown on Exhibit 3.

16.     An additional example of a prior art Pepper Spray Canister with rhinestones

11

featured in a May 4, 2013 Facebook Post from Safely Sexy Defense is shown below:



17.     Atteberry and Mazzone had knowledge of the Pepperface prior art designs before filing the design patent applications of the Patents in Suit.  On information and belief, Atteberry and Mazzone had knowledge of the Pepperface and Safely Sexy Defense prior art designs before the conception dates and the design patent application dates of the Patents in Suit.  Atteberry and Mazzone did not disclose this prior art to the patent office during the period of time when they were prosecuting their applications for the patents in suit.

18.     On June 15, 2011, more than two years before Atteberry and Mazzone's claimed conception date of on or about August 1, 2013 for the Patents-in-Suit, Simone Sheffield filed Design Patent Application 29/394320 entitled "Wall of Bling."

19.     The specification for the "Wall of Bling" Patent Application stated in part as follows:

> The ornamental design consists of flat-back crystal stones of various shapes and sizes, that are positioned side-by-side, edges in contact on all sides, and affixed covering the cap or cover of a cosmetic component.
>
> The cosmetic component may hold any type of cosmetic ingredient or material and

may be any shape or size appropriate for the cosmetic product housed inside.

The ornamental design will cover all sides of the cap and all parts of the cap, except those needed for functionality or are part of the components structure that precludes it from having the design placed on it.
The design consists of flat-back crystal stones that are positioned side-by-side, edges in contact on all sides, to form the appearance of a "wall of bling."

The ornamental design may be affixed to the cap by any adhesive necessary to ensure it remains in place.

The drawings included in this application include several shapes and size caps but the ornamental "wall of bling" design can affixed to any size or shape cap for a cosmetic component.

(emphasis added).

20.     Drawings included in the "Wall of Bling" Patent Application are as follows:







21.     The "Wall of Bling" Patent Application matured into United States Design Patent D667,998 ("the '998 Patent) entitled "Cosmetic Cap with Crystal Stones."  Figure 1 of the '998 Patent is as follows:



Figure 1

15

22.     On June 15, 2011, more than two years before Atteberry and Mazzone's claimed conception date of on or about August 1, 2013 for the Patents-in-Suit, Simone Sheffield filed a Continuation in Part of Design Patent Application 29/394320 entitled "Wall of Bling," Design Patent Application 29/397685.

23.     The specification for the "Wall of Bling" Patent Application 29/394320 stated in part as follows:

> The ornamental design consists of flat-back crystal stones of various shapes and sizes, which are positioned side-by-side, edges in contact on a!! sides, and affixed covering the cosmetic components and/or accessories.
>
> The shapes and/or sizes of the components and/or accessories do not affect the substantive nature of the design. The design will be conformed to the particular shape and size of the component or accessory.
>
> The ornamental design will cover all sides of components and/or accessories, except those needed for functionality or are part of the components structure that precludes it from having the design placed on it.
>
> The design consists of flat-back crystal stones that are positioned side-by-side, edges in contact on all sides, to form the appearance of a "wall of bling."
>
> The ornamental design may be affixed by any adhesive necessary to ensure it remains in place on the particular material of the component or accessory.
>
> The drawings included in this application include several shapes and sizes to illustrate the ornamental "wall of bling" design.
>
> However, the ornamental design will conform to the size and shape of the surface on which it is affixed.

24.     Drawings included in the "Wall of Bling" Patent Application 29/394320 are as follows:



Figure 1

Figure 2

Figure 3

Figure 4



Figure 5                              Figure 6



Figure 7

25.     The "Wall of Bling" Patent Application 29/394320 matured into United States Design Patent D667,999 ("the '999 Patent) entitled "Cosmetic Cap with Crystal Stones."  The sole Figure of the '999 Patent is as follows:

18



26.     The '999 Patent is referenced as a prior art patent in both Patents-in-Suit.

27.     On or about February 17, 2017, an attorney representing Super-Sparkly wrote a letter to a representative of Skyline alleging infringement of the '857 Patent.  A copy of the letter is attached as exhibit 3.  The letter did not contain a claim chart and did not compare the patented and accused designs in light of the prior art.

28.     On or about April 17, 2017, a representative of Skyline responded to the letter with a letter that is attached as exhibit 4.  In the response letter, the patented and accused designs are compared in light of the prior art as required by design patent law.

29.     The prior art identified in the response letter is as follows:







30.     The patented and accused designs are compared as follows:



D696857                     D731172                   Accused Product

31.     The response letter stated:

The only matters claimed in the design patents are the rhinestone covered containers.  The pepper spray canister and the loop are disclaimed with broken lines.  A comparison of the accused designs with the patented designs reveals some obvious and substantial differences.  First, the accused design does not have a cutout like the designs in D696857.  Second, the accused design does not have a bottom surface covered in rhinestones like all designs in D696857 and D731172.

The potential prior art confirms that these differences are significant and would be noticed by an ordinary observer under the ordinary observer test.  We have not spent the money to do a comprehensive prior art search yet for invalidity purposes and we just obtained images from the Internet related to rhinestone covered containers.  Some of these images are as follows: [shown above].

32.     The response letter stated further:

These [prior art] images indicate that the design of a rhinestone covered container/covering appears to be present in the prior art.  Therefore, since the general design of a rhinestone covered container/covering appears to be in the prior art, under *Egyptian Goddess v. Swisa*, 543 F.3d 665 (2008) (en banc), differences in the coverage patterns of the rhinestones on the container/covering will be easily noticed by an ordinary observer.  Since the accused design clearly is different in its rhinestone coverage pattern (no cutouts, no bottom) from the patented designs, infringement does not exist under the ordinary observer test.  If you disagree with this conclusion, please write me back and provide me with your analysis.  Note that the potential prior art also indicates that the claimed designs may be invalid, but we do not address that issue at this time because we believe the accused designs are non-infringing.

33.     Skyline did not hear back from the legal representative of Super-Sparkly after the response letter was sent to Super-Sparkly.

34.     Skyline then received notice that it had been sued by Super-Sparkly on March 13, 2018 by different legal representatives of Super-Sparkly.

35.     Super-Sparkly has contacted the customers of Skyline including Amazon, Academy, Dollar General, Home Security Superstore, and Amerimark alleging the Skyline pepper spray product infringes upon the Patents in Suit.  Super-Sparkly's allegations have caused one or more of Skyline's customers to stop purchasing pepper spray from Skyline, thereby causing Skyline damages.

36.     On information and belief, Super-Sparkly did not conduct a reasonable pre-suit investigation before filing suit to determine what prior art was relevant to the issues of patent validity and patent infringement.

### FIRST COUNTERCLAIM:
### DECLARATORY JUDGMENT OF NON-INFRINGEMENT
### OF THE '172 AND '857 PATENTS

37.     To the extent not inconsistent, Skyline incorporates by reference the allegations set forth in Counterclaim Paragraphs 1-36, the same as if fully set forth herein.

38.     Skyline is not infringing and has not infringed any properly construed, valid claims of the '172 and '857 Patents.

39.     Design patent infringement is determined according to the ordinary observer test where the patented and accused designs are compared in light of the prior art.  The prior art in this case includes, without limitation, the following designs:







40.     Since the prior art includes pepper spray designs and analogous art designs with rhinestones covering different portions of the canisters and containers, an ordinary observer would be able to easily distinguish as a matter of law between the patented and accused rhinestone designs that cover different portions of the pepper spray canister.   In particular, as shown below, the patented designs include a hollow cylinder with an attached bottom covered with rhinestones whereas the accused design (below right) does not.   Furthermore, the '857 patented design (middle) includes an open area not covered in rhinestones whereas the accused design does not.



41.     The accused design is simply a hollow cylinder or tube of rhinestone covered wrap material without a top or a bottom.  This design clearly existed in the prior art as shown above on both pepper spray products and in analogous prior art.  The only portion claimed in the Patents in Suit is the rhinestone covered material.  The remainder of the pepper spray canister is disclaimed with broken lines.  Therefore, when performing the ordinary observer test, the only portion to be compared is the rhinestone design portion.  Since the rhinestone design portion of the Skyline pepper spray product is a hollow cylinder or tube of rhinestone material without a top or bottom, and this design portion exists in the prior art, design patent infringement under the ordinary observer test does not and cannot exist as a matter of law.

42.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., Skyline requests a declaration by the Court that it does not infringe the '172 and '857 Patents.

## SECOND COUNTERCLAIM:
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '172 AND '857 PATENTS

43.     To the extent not inconsistent, Skyline incorporates by reference the allegations set forth in Counterclaim Paragraphs 1-42, the same as if fully set forth herein.

44.     The '172 and '857 Patents are invalid under 35 U.S.C. §§ 102 and/or 103.

45.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., Skyline requests a declaration by the Court that the '172 and '857 Patents are invalid.

## THIRD COUNTERCLAIM:
## DECLARATORY JUDGMENT OF PATENT UNENFORCEABILITY OF THE '172 AND '857 PATENTS DUE TO INEQUITABLE CONDUCT

46.     To the extent not inconsistent, Skyline incorporates by reference the allegations set forth in Counterclaim Paragraphs 1-45, the same as if fully set forth herein.

47.     The named inventors of the patents-in-suit, Atteberry and Mazzone, had knowledge of the Pepperface and Safely Sexy Defense prior art designs before the design patent application

dates of the patents in suit, and on information and belief, before the conception dates of the patents in suit.  Despite their knowledge that the Pepperface and Safely Sexy designs were highly material prior art designs, Atteberry and Mazzone did not disclose this prior art to the patent office during the period of time when they were prosecuting their applications for the Patents in Suit.  The Pepperface and Safely Sexy prior art designs are highly material because they disclose designs of rhinestones covering a pepper spray canister.  When the Pepperface prior art designs are combined with other prior art disclosed in the "Wall of Bling" Patent Applications and Response Letter as described above, the designs of the patent in suit, if not invalid through anticipation, are rendered invalid as obvious.

48.     The withheld references were material to the patentability of the claims of the '172 and '857 Patents.

49.     The '172 and '857 Patents are unenforceable because Atteberry and Mazzone intentionally and knowingly withheld information material to determining the patentability of the '172 and '857 Patents.

50.     Due to the inequitable conduct of Atteberry and Mazzone before the USPTO, the '172 and '857 Patents are unenforceable under the doctrine of unclean hands.

## FOURTH COUNTERCLAIM:
## DECLARATORY JUDGMENT THAT SUPER-SPARKLY HAS FAILED TO COMPLY WITH 35 U.S.C. § 287

51.     To the extent not inconsistent, Skyline incorporates by reference the allegations set forth in Counterclaim Paragraphs 1-50, the same as if fully set forth herein.

52.     Pursuant to 35 U.S.C. § 287(a), a patentee must mark goods covered by the patent with the patent number in a substantially consistent and continuous manner.

53.     Under 35 U.S.C. § 287(a), because of Super Sparkly's failure to mark in a

substantially consistent and continuous manner, "no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice."

54.     On information and belief, Super Sparkly has not marked its products in a substantially consistent and continuous manner.

55.     Skyline is entitled to a declaration that Super-Sparkly may not recover damages, if any, prior to when Super-Sparkly first gave Skyline actual notice of its allegations of patent infringement.

## FIFTH COUNTERCLAIM:
## UNFAIR COMPETITION PURSUANT TO THE LANHAM ACT, 15 U.S.C § 1125(A)(L)

56.     To the extent not inconsistent, Skyline incorporates by reference the allegations set forth in Counterclaim Paragraphs 1-55, the same as if fully set forth herein.

57.     Plaintiff Super-Sparkly's conduct, as described in these Counterclaims, constitutes unfair competition as set forth in the Lanham Act.

58.     In connection with providing in interstate commerce its products and in communicating with Defendant Skyline's customers, Plaintiff Super-Sparkly made numerous false and/or misleading descriptions and representations of fact regarding Super-Sparkly's patent rights and/or the nature, characteristics, or qualities of Skyline's goods, including but not limited to alleging that Skyline's pepper spray products infringe Super-Sparkly's patent rights where no such finding has occurred and where such allegation is objectively baseless and made in bad faith by Super-Sparkly.

59.     These false and/or misleading descriptions and representations of fact were likely to cause and/or did in fact cause confusion, mistake, and deception as to the nature of whether

Defendant Skyline's products infringed, and the potential liability of Skyline's customers in using, offering for sale, and selling said products. Plaintiff Super-Sparkly made these false and/or misleading descriptions and representations of fact willfully.

60.     As a result and/or consequence of Plaintiff Super-Sparkly's false and/or misleading descriptions and representations of fact, Defendant Skyline has suffered, is presently suffering, and/or will in the future suffer substantial harm and damage, including but not necessarily limited to injury to its good will and business reputation, loss of customers, loss of potential customers, loss of profits, and/or loss of revenue. In addition, as a result and/or consequence of Plaintiff Super-Sparkly's false and/or misleading descriptions and representations of fact, Skyline has suffered, is presently suffering, and/or will in the future suffer irreparable harm for which there is no adequate remedy at law.

61.     Pursuant to 15 U.S.C. § 1ll 7(a), Defendant Skyline is entitled to recover Plaintiff Super-Sparkly's potential profits, the damages sustained by Skyline, the costs of this action, treble damages, an enhanced sum in lieu of Super-Sparkly's potential profits, and, because Super-Sparkly's pattern of willful conduct makes this an exceptional case, reasonable attorney's fees.  In addition, Skyline is entitled to such injunctive relief as the Court may find just to prevent irreparable harm for which there is no adequate remedy at law.

WHEREFORE, Defendant Skyline prays for judgment as set forth hereinafter.

## SIXTH COUNTERCLAIM:
## COMMON LAW UNFAIR COMPETITION

62.     To the extent not inconsistent, Skyline incorporates by reference the allegations set forth in Counterclaim Paragraphs 1-61, the same as if fully set forth herein.

63.     Super-Sparkly made false and misleading representations to customers, potential customers, suppliers, and those with whom Skyline had existing economic relations that products

developed and sold by Skyline infringe valid and enforceable patent rights owned by Super-Sparkly.

64.     Super-Sparkly made these statements without a reasonable belief that Skyline's products could possibly infringe any valid or enforceable patent issued to Super-Sparkly.

65.     Super-Sparkly's statements were made without a reasonable factual or legal basis in an effort to undermine Skyline's position in the marketplace and to unfairly gain a competitive advantage over Skyline.

66.     Super-Sparkly's statements and misrepresentations proximately caused, and continue to cause, immediate and irreparable harm to Skyline's goodwill and commercial reputation for which there is no adequate remedy at law in addition to causing lost sales and lost profits for which Skyline is entitled to monetary and equitable relief.

WHEREFORE, Defendant Skyline prays for judgment as set forth hereinafter.

## SEVENTH COUNTERCLAIM:
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

67.     To the extent not inconsistent, Skyline incorporates by reference the allegations set forth in Counterclaim Paragraphs 1-66, the same as if fully set forth herein.

68.     Super-Sparkly's conduct, as described in these Counterclaims, constitutes tortious interference with contracts.

69.     Skyline has and had contract(s) to do business with customers regarding Skyline's pepper spray products.

70.     Super-Sparkly's communications to Skyline's customers that Skyline's products infringe Super-Sparkly's design patents constitute a wrongful, deliberate, willful and intentional interference with the contract(s) between Skyline and its customers.

71.     Such communications between Super-Sparkly and Skyline's customers have

proximately caused actual damages to Skyline in an amount to be determined at trial.

72.     Super-Sparkly's communications to Skyline's customers that Skyline's products infringe Super-Sparkly's design patents contain claims that are objectively baseless and were sent in bad faith.

73.     Such communications with baseless allegations constitute tortious interference with contract.

WHEREFORE, Skyline prays for judgment as set forth hereinafter.

## EIGHTH COUNTERCLAIM:
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
## AND PROSPECTIVE CONTRACTS

74.     To the extent not inconsistent, Skyline incorporates by reference the allegations set forth in Counterclaim Paragraphs 1-73, the same as if fully set forth herein.

75.     Super-Sparkly's conduct, as described in these Counterclaims, constitutes tortious interference with business relations and prospective contracts.

76.     Skyline had business relations with customers that purchased Skyline's pepper spray products and there was a reasonable probability Skyline would enter into contract(s) to do business with other customers to purchase its pepper spray products.

77.     Super-Sparkly's communications to Skyline's customers that Skyline's products infringe Super-Sparkly's design patents constitute a wrongful, deliberate, willful, intentional or otherwise tortious interference with business relations and prospective contracts between Skyline and Skyline's customers.

78.     Such wrongful communications between Super-Sparkly and Skyline's customers have proximately caused actual damages to Skyline in an amount to be determined at trial.

79.     Super-Sparkly's communications to Skyline's customer's contain claims that are

objectively baseless and were sent in bad faith.

80.     Such baseless allegations constitute tortious interference with business relations and prospective contracts.

WHEREFORE, Skyline prays for judgment as set forth hereinafter.

**NINTH COUNTERCLAIM:**
**BUSINESS DISPARAGEMENT**

81.     To the extent not inconsistent, Skyline incorporates by reference the allegations set forth in Counterclaim Paragraphs 1-80, the same as if fully set forth herein.

82.     Super-Sparkly's conduct, as described in these Counterclaims, constitutes business disparagement.

83.     In Super-Sparkly's communications to Skyline's customers, Super-Sparkly published false and disparaging information regarding Skyline's products.

84.     The false and disparaging comments by Super-Sparkly include but are not limited to the statements accusing Skyline of infringing the Patents in Suit.

85.     Such false and disparaging statements by Super-Sparkly to Skyline's customers regarding Skyline's product were made with malice and without privilege.

86.     Such communications between Super-Sparkly and Skyline's customers have proximately caused actual damages to Skyline in an amount to be determined at trial.

87.     Super-Sparkly's communications to Skyline's customer's contain claims that are objectively baseless and were sent in bad faith.

88.     Such baseless allegations constitute business disparagement.

WHEREFORE, Skyline prays for judgment as set forth hereinafter.

## TENTH COUNTERCLAIM:
## DEFAMATION

89.     To the extent not inconsistent, Skyline incorporates by reference the allegations set forth in Counterclaim Paragraphs 1-88, the same as if fully set forth herein.

90.     Super-Sparkly's conduct, as described in these Counterclaims, constitutes defamation.

91.     In Super-Sparkly's communications to Skyline's customers, Super-Sparkly published false and defamatory information regarding Skyline and Skyline's product.

92.     The false and defamatory comments by Super-Sparkly include but are not limited to the statements accusing Skyline of infringing the Patents in Suit.

93.     Such false and defamatory statements by Super-Sparkly to Skyline's customers regarding Skyline and Skyline's products were made willfully, or alternatively with negligence as to their truth.

94.     Super-Sparkly's allegations were sent without adequate investigation, were wrongful, and meant only to intimidate, oppress, and to interfere with Skyline's business relationships with Skyline's customer(s).

95.     Such communications between Super-Sparkly and Skyline's customers have proximately caused actual damages to Skyline in an amount to be determined at trial.

96.     Super-Sparkly's communications to Skyline's customer's contain claims that are objectively baseless and were sent in bad faith.

97.     Such baseless allegations constitute defamation.

## DEMAND FOR A JURY TRIAL

Skyline, pursuant to Rule 38(b) of the Federal Rues of Civil Procedure, demands a trial by jury on all issues triable by right by a jury.

## SKYLINE'S PRAYER FOR RELIEF

Skyline prays that the Court:

1.      Enter judgment in favor of Skyline and against Super-Sparkly, and denying any and all of Super-Sparkly's requests for relief;

2.      Enter judgment that the Complaint be dismissed with prejudice, and that Super-Sparkly take nothing by its Complaint;

3.      Enter judgment declaring that Skyline has not infringed the '172 and '857 Patents;

4.      Enter judgment declaring that the '172 and '857 Patents are invalid;

5.      Enter judgment declaring that the '172 and '857 Patents are unenforceable;

6.      Enter judgment declaring that Super-Sparkly did not properly mark its products under 35 U.S.C. § 287;

7.      Enter a permanent injunction restraining Super-Sparkly and its respective officers, agents, servants, employees, attorneys, and any other persons acting on its behalf or in concert with it, from charging, alleging, or threatening, orally or in writing, that the '172 and '857 Patents have been infringed by Skyline under any subsection of 35 U.S.C. § 271;

8.      Award Skyline its reasonable attorneys' fees, costs, prejudgment interest, and post-judgment interest as provided or permitted by law, including, without limitation, because this case is exceptional under 35 U.S.C. § 285;

9.      Enter judgment with damages to be determined at trial for Super-Sparkly's unfair competition pursuant to the Lanham Act, including treble damages;

10.      Enter judgment with damages to be determined at trial for Super-Sparkly's tortious interference with contract;

11.      Enter judgment with damages to be determined at trial for Super-Sparkly's tortious

interference with business relations and prospective contracts;

12.     Enter judgment with damages to be determined at trial for Super-Sparkly's business

disparagement;

13.     Enter judgment with damages to be determined at trial for Super-Sparkly's

defamation;

14.     Prejudgment and post-judgment interest;

15.     Costs of suit; and

16.     Award Skyline such other and further relief, both general and special, at law or in

equity, as the Court may deem just and proper.

Dated: May 13, 2019

Respectfully submitted,

/s/ Robert G. Oake, Jr.
Robert G. Oake, Jr.
Texas State Bar No. 15154300
Oake Law Office
700 S. Central Expy, Suite 400
Allen, Texas 75013
(214) 207-9066
rgo@oake.com

Attorney for Skyline

CERTIFICATE OF SERVICE

On May 13, 2019, I electronically submitted the foregoing document with the clerk of court

for the U.S. District Court, Northern District of Texas, using the electronic case filing system of

the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically

or by another manner authorized by Federal Rule of Civil Procedure 5 (b)(2).

/s/ Robert G. Oake, Jr.
Robert G. Oake, Jr.
Attorney for Defendant

# EXHIBIT 1



US00D731172S

(12) **United States Design Patent**   (10) Patent No.:   **US D731,172 S**
Atteberry et al.   (45) Date of Patent:   ∗∗   **Jun. 9, 2015**

(54) **RHINESTONE COVERED CONTAINER FOR PEPPER SPRAY CANISTER**

(71) Applicants:**Andrea A Atteberry**, New York, NY (US); **Gabriel P Mazzone**, San Jose, CA (US)

(72) Inventors: **Andrea A Atteberry**, New York, NY (US); **Gabriel P Mazzone**, San Jose, CA (US)

(∗∗) Term: **14 Years**

(21) Appl. No.: **29/466,781**

(22) Filed: **Sep. 11, 2013**

(51) **LOC (10) Cl.** ............................................ **03-01**
(52) **U.S. Cl.**
USPC ......................................... **D3/215**
(58) **Field of Classification Search**
USPC ................. D3/215, 208–212, 229, 201–205; 222/47, 153.1, 153.11, 153.13, 175, 222/182–183, 402.11; 70/414, 456 R; 224/246, 674, 669, 240, 683, 904, 914
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

D404,562 S  *  1/1999  Brown et al.  .................. D3/215
D464,793 S  *  10/2002  Anderton  ...................... D3/215
(Continued)

*Primary Examiner* — Catheri Oliver-Garcia
(74) *Attorney, Agent, or Firm* — Joe D. Calhoun

(57)   **CLAIM**
We claim the ornamental design for a rhinestone covered container for pepper spray canister, as shown and described.

**DESCRIPTION**

FIG. **1** is a front perspective view of a rhinestone covered container for a pepper spray canister, covering a portion of a representative sample of a pepper canister within (in broken lines, unclaimed); also unclaimed is a representative sample of a loop for a key chain or similar device.
FIG. **2** is a top plan view of FIG. **1** thereof.
FIG. **3** is a bottom plan view of FIG. **1** thereof.
FIG. **4** is a front elevation view of FIG. **1** thereof, the rear elevation view being a mirror image thereof.
FIG. **5** is a left side elevation view of FIG. **1** thereof, the right side elevation view being a mirror mage thereof.
FIG. **6** is a front perspective of a rhinestone covered container for a pepper spray canister, covering a portion (less than that of FIG. **1**) of the representative sample of a pepper canister within (in broken lines, unclaimed); also unclaimed is a representative sample of a loop for a key chain or other attachment.
FIG. **7** is a front elevation view of FIG. **6** thereof, the rear elevation view being a mirror image thereof.
FIG. **8** is a left side elevation view of FIG. **6** thereof, the right side elevation view being a mirror image thereof.
FIG. **9** is a front perspective view of a rhinestone covered container for a pepper spray canister within (in broken lines, unclaimed); also unclaimed is a representative sample of a loop for a key chain or other attachment.
FIG. **10** is a front elevation view of FIG. **9** thereof, the rear elevation view being a mirror image thereof.
FIG. **11** is a left side elevation view of FIG. **9** thereof, the right side elevation view being a mirror image thereof.
FIG. **12** is a front perspective view of a rhinestone covered container for a pepper spray canister, covering a portion (less than that of FIG. **9**) of the representative sample of a pepper canister within (in broken lines, unclaimed); also unclaimed is a representative sample of a loop for a key chain or other attachment.
FIG. **13** is a front elevation view of FIG. **12** thereof, the rear elevation view being a mirror image thereof; and,
FIG. **14** is a left side elevation view of FIG. **12** thereof, the right side elevation view being a mirror image thereof.
The broken lines are for illustrative purposes and do not form part of the claimed design. It is understood that, disregarding the unclaimed material in broken lines, each respective bottom plan view of the latter three embodiments (FIGS. **6**, **9** and **12**) is the same as that of the first embodiment, depicted in FIG. **3**. Each respective top plan view of the latter three embodiments is almost identical to that of the first embodiment, depicted in FIG. **3**.

**1 Claim, 7 Drawing Sheets**



## US D731,172 S

Page 2

(56)          **References Cited**

U.S. PATENT DOCUMENTS

D465,645 S  *  11/2002  Lombardo et al. ............. D3/215
D468,092 S  *   1/2003  Anderton ...................... D3/215

D485,981 S  *   2/2004  Romero ......................... D3/215
D516,241 S  *   2/2006  Gaines et al. ............... D27/161
D667,999 S  *   9/2012  Sheffield ...................... D28/81

* cited by examiner



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6



FIG. 7

FIG. 8



FIG. 9

FIG. 10



FIG. 11



FIG. 12

**U.S. Patent**        Jun. 9, 2015        Sheet 7 of 7        US D731,172 S



FIG. 13

FIG. 14

# EXHIBIT 2

US00D696857S

(12) **United States Design Patent**     (10) Patent No.:      **US D696,857 S**
Atteberry et al.                         (45) Date of Patent:   **      Jan. 7, 2014**

(54) **RHINESTONE COVERED CONTAINER FOR PEPPER SPRAY**

(71) Applicants: **Andrea Atteberry**, New York, NY (US);
**Gabe Mazzone**, San Francisco, CA (US)

(72) Inventors: **Andrea Atteberry**, New York, NY (US);
**Gabe Mazzone**, San Francisco, CA (US)

(**) Term:     **14 Years**

(21) Appl. No.: **29/447,536**

(22) Filed:    **Mar. 4, 2013**

(51) **LOC (10) Cl.** ..............................................  **03-01**

(52) **U.S. Cl.**
USPC .........................................................  **D3/215**

(58) **Field of Classification Search**
USPC ................. D3/215, 208–212, 229, 201–205;
222/47, 153.1, 153.11, 153.13, 175,
222/182–183, 402.11; 70/414, 456 R;
224/246, 674, 669, 240, 683, 904, 914
See application file for complete search history.

(56)              **References Cited**

U.S. PATENT DOCUMENTS

2,699,667 A * 1/1955 Mark et al. ..................... 70/414
4,220,263 A * 9/1980 Caruso .......................... 222/183

(Continued)

OTHER PUBLICATIONS

Blingsting Pepper Spray, 2013, www.blingsting.com.*

*Primary Examiner* — Catheri Oliver-Garcia
(74) *Attorney, Agent, or Firm* — Joe D. Calhoun

(57)                 **CLAIM**
The ornamental design for a rhinestone covered container for pepper spray, as shown and described.

DESCRIPTION

FIG. **1** is a perspective view of a rhinestone covered container for pepper spray, having a cutout configuration in the shape of a heart, and a hollow interior.
FIG. **2** is a top plan view of FIG. **1** thereof.
FIG. **3** is a bottom plan view of FIG. **1** thereof.
FIG. **4** is a front elevation view of FIG. **1** thereof.
FIG. **5** is a rear elevation view of FIG. **1** thereof.
FIG. **6** is a first side elevation view of FIG. **1** thereof, with the second side elevation being a mirror image of the first side elevation.
FIG. **7** is another perspective view of FIG. **1** thereof, with a pair of rings attached to the attachment opening, with the rings shown in broken lines.
FIG. **8** is another perspective view of an embodiment of FIG. **1** thereof, with the container having a cutout configuration in the shape of a circle.
FIG. **9** is a front elevation view of FIG. **8** thereof.
FIG. **10** is another perspective view of an embodiment of FIG. **1** thereof, with the container having a cutout configuration in the shape of a square.
FIG. **11** is a front elevation view of FIG. **10** thereof.
FIG. **12** is a perspective view of alternative embodiment of the rhinestone covered container for pepper spray, with the container having a closed top or cap, a cutout configuration in the shape of a heart, and a thumb-trigger; and,
FIG. **13** is another perspective view of FIG. **12** thereof.
It is understood that the corresponding top plan, bottom plan, rear elevation, and side elevation views of the embodiments having a circle-shape cutout configuration and a square-shape cutout configuration of the container are similar to the views of the container having a heart-shaped cutout configuration of the embodiment of FIGS. **1**-7, respectively. The corresponding views of the embodiment shown in FIG. **12** are similar to the views of FIGS. **1**-7.
The broken lines are for illustrative purposes and do not form part of the claimed invention.

**1 Claim, 7 Drawing Sheets**



**US D696,857 S**

Page 2

(56)          **References Cited**

U.S. PATENT DOCUMENTS

D270,968  S   *   10/1983   Boal .............................. D3/208
4,454,966  A   *    6/1984   Hicks ....................... 222/153.11
5,111,968  A   *    5/1992   Wilkerson ...................... 222/47

5,458,263  A   *   10/1995   Ciammitti et al. ......... 222/153.1
D418,289  S   *    1/2000   Olson ........................... D3/208
D503,039  S   *    3/2005   Cook et al. .................... D3/229
D649,777  S   *   12/2011   Tyybakinoja et al. ......... D3/215

* cited by examiner



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6



FIG. 7

FIG. 8



FIG. 9



FIG. 10



FIG. 11



FIG. 12



FIG. 13

# EXHIBIT 3

INTERNET ARCHIVE
WaybackMachine

http://www.pepperface.com/store/auction.html

57 captures
13 May 2006 – 4 Feb 2016

JUN **JUL** NOV
▼ **05** ▲
2011 **2012** 2014

PEPPERFACE.COM                    PROTECT YOUR        cousin

home  store  celebrity-auction  awareness  project purple  know-means-know  press  resources  contact  my-cart

# PREVIOUS CELEBRITY AUCTIONS

Pepperface again partners with your favorite celebrities to support the **National Center on Domestic and Sexual Violence.** Socially conscious celebrities transform signature Pepperface Palm Defenders into customized symbols of support to end violence against women. These one-of-a-kind exclusive models, decorated with Swarovski® crystals, paint, glitter, and even a few with precious stones including rubies, sapphires and diamonds have been auctioned off since the beginning of April 30, 2007 with **all of the proceeds benefiting the NCDSV.**

"One in three women will be attacked with the intent of sexual assault in her lifetime," said National Center on Domestic and Sexual Violence Executive Director, Debby Tucker. "We are excited to partner with Pepperface.com to create awareness

PEPPERFACE.COM   NATIONAL CENTER on Domestic and Sexual Violence   CRYSTALICING.COM™




## Carmen Electra

"I think it is so important to raise awareness about sexual violence. All women need to be educated so they feel safe and know how to protect themselves. Pepperface is the perfect tool for doing just that — it makes a woman feel more in control. I love my Pepperface and think every woman should have stunning and bold presence on screen. Carmen Electra Like her stunning and bold presence on screen, Ms. Electra powerfully demonstrates her commitment to the campaign with her intricate skull design featured on a "Bad-Ass Black" Pepperface.

## Lindsay Lohan

Hollywood's favorite super starlet embraces her iconic popularity by continuing her support of the Prevention Purple Campaign and the NCDSV. Ms. Lohan's active participation in generating awareness and supporting the prevention of violence against women is Award worthy. Ms. Lohan promotes protecting ALL women by inspiring us with her edgy Skull & Crossbones Pepperface design.






## Denise Richards

The gorgeous and glamorous Ms. Richards has stepped into the Prevention Purple Celebrity Auction with her beautifully styled Pepperface, designing a black stiletto with a delicate pink background – This Hollywood starlet puts the chic in personal safety.





## Paula Abdul

Similar to her engaging role as the thoughtful and caring judge on American Idol, Paula Abdul has chosen the Prevention Purple Campaign as a worthwhile Cause to promote personal safety of women everywhere. With her flashy gold flower design, Paula has chosen a winner – The Campaign has voted, we love Paula!





## Tori Spelling

We have been fortunate to see this Hollywood actress grow up in front of our eyes – with her starring role as Donna on Beverly Hills 90210, to now her marriage and motherhood. Utilizing soft baby blue crystals, Tori's self-named Pepperface design embodies her caring and loving nature. The Campaign and fans everywhere are thrilled to watch her flourish. "









## Hilary Duff

Ms. Duff's youthful energy and excitement makes her Hollywood's darling – her sparkling powder blue crystal design, accented with yellow and white daisies is fabulous – just like Hilary.   The Duff sisters have shown incredible commitment to ending violence against women, as Hilary's sister, Haylie, participated in last year's Celebrity Auction.   The Campaign says, "Thank you Hilary!"







## Raquel Welch

This dynamic actress and true Hollywood Idol joined the Campaign and demonstrated her seriousness toward the violence against women cause.   Ms. Welch chose to personally design and decorate her Pepperface using Swarovski crystals, glitter and paint.   The Hollywood Queen is truly a role-model for the Campaign and her adoring fans – her efforts are immeasurable.







## Sarah Chalke

Ms. Chalke has shown us many characters and faces on television, from her current starring role on the mega-series Scrubs to her excellent performance as Becky on the hit-show Roseanne.   While she is a dynamic actress and plays roles very well, it is Sarah Chalke that the Campaign is so proud of.   She has been very supportive of the efforts to end violence against women – displayed by her creatively designed zebra & tiger striped fade, with the Chinese symbol of courage in the center.





## Kimberly Stewart

This beautiful blonde is our Hollywood princess. Daughter of music legend Rod Stewart, Kimberly has embraced her status as social elite by contributing positively to the Campaign and engaging the public in our socially responsible effort. Kimberly's design is a shimmering example of her support for the Cause. Kimberly Stewart Rocks!





## Lacey Chabert

Not since her starring role in Mean Girls has anyone suggested that Ms. Chabert is anything but wonderfully nice. Lacey has shown us that she cares by fully supporting the efforts of the Prevention Purple Campaign, through her creatively designed hot pink Pepperface – with a big heart, just like Lacey.







## Kelly Ripa

This glamorous television A-lister impressed us (as always) with her commitment to her adoring fans and women everywhere by personally crystallizing her Pepperface with a sparkling martini glass design – in celebration of our fight for awareness.









## Jaime Pressly

Definitely in the running as our favorite celebrity, Jaime Pressly fashioned her Pepperface design after her 'uber popular' clothing label, *Jaime*. Along with the design, she sent her love and declared that "every woman should carry a Pepperface."







## Gabrielle Union

Gabrielle collaborated with Crystal Icing™ designers to create one of our most beautiful patterns. The detail and intricacy of the Swarovski® crystals reflects her personal commitment to the Prevention Purple Campaign and awareness to end violence against women.







## Haylie Duff

The perfect role model for young women everywhere – Haylie's amazing voice and hip style translate to her Pepperface design. Crystal Icing worked with the singer/actress to create a pattern that captures the feel of her current Broadway role in Hairspray.







## Jason Lee

This leading man leads the way reminding men that this vital issue affects everyone. Jason chose a strong and masculine yellow and blue pattern for his Pepperface design. The design stands out, like Jason, as a vibrant example that men everywhere should get involved.







## Stacy Keibler

Her same personal style and positive energy on the dance floor is embodied in Stacy's Pepperface design, which she self titled, "Keibs". Stacy expressed genuine commitment to furthering the efforts of the National Center on Domestic and Sexual Violence.







## Nadine Velazquez

Nadine Velazquez, one of our favorite My Name is Earl additions, was excited to participate in this year's Prevention Purple Auction. The former *The Bold and the Beautiful* starlet chose the bold statement "BACK OFF" as her Pepperface design.







## Ethan Suplee

From Clerks II, John Q. Dogma, to Mallrats, we've come to expect great things from Ethan in every role he plays. His participation in our Prevention Purple efforts gives us another reason to be impressed by this young actor. Like Ethan, his design is interesting and very cool.





## Eddie Steeples

Eddie's support for the NCDSV is as lively and engaging as his presence on screen. His Pepperface is brightly designed with the signature prevention Purple colors.

